**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| METHODIST HEALTH SERVICES CORPORATION<br>        Plaintiff,<br><br>v.<br><br> OSF HEALTHCARE SYSTEM d/b/a SAINT FRANCIS MEDICAL CENTER<br>        Defendant. | No. 13-1054 |

**Order**

Now before the Court are the Defendant OSF Healthcare System's (OSF) Limited Motion to Compel Discovery (Doc. 68) and its Motion to Compel Discovery of UnityPoint (Doc. 69).  The Motions are fully briefed.  For the reasons stated herein, OSF's Limited Motion to Compel Discovery (Doc. 68) is GRANTED IN PART AND DENIED IN PART.  Its Motion to Compel Discovery of UnityPoint (Doc. 69) is DENIED.

 In its Complaint, the Plaintiff Methodist Health Services Corporation (Methodist) alleges that the Defendant has engaged in predatory and exclusionary conduct to reduce competition and raise prices at the expense of consumers in two relevant product markets in the tri-county area of Peoria, Tazewell, and Woodford:  1) the sale of general acute-care inpatient hospital

1

services to commercial health insurers; and 2) the sale of outpatient surgical services to commercial health insurers. The Plaintiff specifically alleges that OSF has leveraged its size and status to force commercial health insurers to enter into exclusionary contracts to preclude those insurers from contracting with other hospitals and healthcare facilities. The Complaint specifically identifies six commercial health insurers including Blue Cross Blue Shield of Illinois (BCBS), Humana, Health Alliance, Aetna, United Healthcare, and Coventry Health Care.[1] The Plaintiff brings claims for violations of Sections 1 and 2 of the Sherman Act, the Illinois Antitrust Act, the Illinois Consumer Fraud Act, and for tortious interference with prospective economic advantage.

The federal discovery rules are to be construed broadly and liberally. *Herbert v Lando*, 441 U.S. 153, 177 (1979); *Jefferys v LRP Publications, Inc.*, 184 FRD 262, 263 (ED Pa 1999). Parties are allowed to obtain discovery regarding any unprivileged matter relevant to the claim or defense of any party. FRCP 26(b)(1). Relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. Id. District courts have broad discretion in matters relating to discovery. *See Brown–*

---

[1] The Defendant notes in its Memorandum of Law in Support of its Limited Motion to Compel Discovery (Doc. 68-1) that the "Group of 8 Payors" identified in discovery requests is an agreed group of commercial payors which the parties used to mutually narrow other written discovery requests. The Group of 8 Payors includes Blue Cross Blue Shield of Illinois, Aetna, Inc., Humana, Inc., Health Alliance Midwest, Inc., Cigna Healthcare of Illinois, Inc., United Healthcare Services, Inc., Conventry Healthcare of Illinois, Inc., and Caterpillar, Inc.

*Bey v United States*, 720 F2d 467, 470–71 (7th Cir 1983). For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v DaimlerChrysler Corp.*, 206 FRD 615, 619 (SD Ind 2002), quoting *Oppenheimer Fund, Inc. v Sanders*, 437 US 340, 351 (1978)).

The party opposing discovery has the burden of proving that the requested discovery should be disallowed. *Carrigan v K2M Inc.*, 2011 WL 1790423, \*4 (CD Ill), citing *Etienne v Wolverine Tube, Inc.*, 185 FRD 653, 656 (D Kan 1999); *Golden Valley Microwave Foods, Inc. v Weaver Popcorn Co.*, 132 FRD 204, 207 (ND Ind 1990). The objecting party must do more than simply recite boilerplate objections such as overbroad, burdensome, oppressive or irrelevant. *See, for example, Telco Group Inc v Ameritrade Inc.*, 2006 WL 560635 (D Neb); *Roesberg v Johns-Manville Corp.*, 85 FRD 292, 297 (D Pa 1980).

If the basis for an objection is lack of relevance, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Chavez*, 206 FRD at 619; *Sheehan v Kruger*, 2012 WL 6049007 (ND Ind).

## I.     Limited Motion to Compel Discovery (Doc. 68)

In its Limited Motion to Compel, the Defendant requests that the Plaintiff be ordered to turn over:  1) documents related to Methodist's physician staffing, compensation, and recruitment (Document Requests 20, 21, 23, and 24); and 2) materials concerning certain meetings of Methodist's Board of Directors that OSF says relate directly to the product markets alleged in this lawsuit (Document Request 52).  The Plaintiff objected to Requests 20, 21, 23, 24, and 52 as "overly broad, vague, irrelevant, or not likely to lead to admissible evidence."  After the Defendant narrowed Requests 20, 21, 23, and 24 following a meet and confer, the Plaintiff objected to the amended Requests 21, 23, and 24 for the additional reason that they unnecessarily invaded the privacy of physicians within the Peoria community.  After the Defendant sent an Amended Request 52 to the Plaintiff, Methodist objected to one subpart of the amended request as overly broad, vague, and unduly burdensome, and another subpart as overly broad and unduly burdensome.

### A.     Amended Requests 20, 21, 23, and 24

First, the Court finds that the Defendant seeks relevant information via Amended Requests 20, 21, 23, and 24.  The Defendant set forth twelve affirmative defenses in its Answer including that there is no direct or proximate causal connection between any harm or injury the Plaintiff alleged and any of

4

OSF's alleged acts.   *See* (Doc. 12 at pp. 55-57).   The Defendant points to

Paragraphs 32 and 102 of the Plaintiff's Complaint in order to show the relevance

of the information requested via Amended Requests 20, 21, 23, and 24.

Paragraph 32 states:

> A new hospital must recruit and hire qualified staff and physicians. Hospitals also rely on referrals from physicians. A new hospital in the Tri-County Area would need to convince area physicians to change their referral patterns. This would be difficult enough if all physicians in the area had independent practices. Here, it would be even more difficult because Saint Francis has sewn up the loyalties of many physicians through its OSF Medical Group, which owns the practices of referring physicians, and other physician groups controlled by Saint Francis or its affiliates.

(Doc. 1 at pp. 9-10).   Paragraph 102 states:

> Furthermore, Saint Francis' conduct adversely impacts physician referral patterns and hospital affiliations. Physicians treating patients covered by commercial health insurers that have been forced into exclusionary contracts by Saint Francis likely have referred more patients to Saint Francis, and more patients likely have chosen to use Saint Francis. Physician productivity mandates that they fill their daily schedule. Many doctors engage in "blockbooking," finding it most efficient to perform all of a given day's surgeries and other procedures at the same facility. If they cannot see the majority of their commercial insurance patients at a facility, such as Methodist, they will shift their patients elsewhere to try to maximize productivity. Thus, absent Saint Francis' exclusionary conduct, its competitors would receive higher patient volumes and utilization, increased revenues, and substantially higher profits.

(Doc. 1 at pp. 26-27).   The Defendant summarizes Methodist's allegations in

Paragraph 32 to allege that the effects of OSF's conduct on physician practices are

a barrier to the entry of new competitive hospitals or surgical centers. The Defendant summarizes the allegations of Paragraph 102 to allege that OSF's actions have the goal and effect of dissuading physicians from affiliating with Methodist and ultimately decreasing Methodist's revenues. Thus, the Defendant says that it is entitled to defend itself against such allegations and to demonstrate that Methodist has only itself to blame for its alleged woes.

The Plaintiff counters that Paragraph 32 does not allege that Methodist was inadequately staffed or that it was not able to recruit physicians, but rather that OSF's relationship with its physicians creates a barrier to market entry. The Plaintiff says that Paragraph 102 also does not allege that Methodist was inadequately staffed or was not able to recruit physicians, but instead relates solely to the inability of patients to receive medical care at Methodist due to OSF's anticompetitive conduct.

The Court cannot discern how the Defendant's reading of the allegations in Paragraphs 32 and 102 is a "blatant" misreading upon which it attempts to argue the relevance of the documents responsive to Amended Requests 20, 21, 23, and 24. OSF's reading of those paragraphs does not suggest that it perceives this lawsuit to be about physician compensation or recruitment. Instead, its interpretation evinces OSF's clear understanding of the claims actually raised in this case. The Amended Requests touch upon the issue of whether OSF's

allegedly anticompetitive conduct (versus some other reasons) caused the problems of which the Plaintiff complains and for which it seeks damages, and thus the Amended Requests seek relevant information.

Second, the Court does not find that responding to the Amended Requests would impose an undue burden on Methodist. As for the Plaintiff's objection that responding to the requests would impose an undue burden upon Methodist, especially given the timeframe of January 1, 2005 to the present for the requested documents, the Court notes that the submitted exhibits indicate that it was the parties themselves who agreed to change the default cutoff for document requests to at least January 1, 2005 to the present. *See* (Doc. 68-8 at p. 3); (Doc. 76-3 at p. 5). If the Court were to permit the Plaintiff's relevance and undue burden objections to prevail, the Court would be ignoring the fact that it must be mindful of the *defenses* as well as the claims that the parties pursue when ruling on discovery motions. *See* FRCP 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"). Here, amended Requests 20, 21, 23, and 24 may be somewhat burdensome, but the Court cannot find that they are *unduly* burdensome in light of the claims and defenses the parties are litigating.

Finally, though the Plaintiff makes a strong argument in support of its objection to amended Requests 21, 23, and 24 that those requests seek

information that "unnecessarily invades the privacy of physicians within the Peoria community," the potential invasion can be avoided. Specifically, the Court must balance any privacy interests against the probative value of the information to the party seeking that information. *Arenson v Whitehall Convalescent and Nursing Home, Inc.*, 161 FRD 355, 358 (ND Ill 1995). For the reasons set forth above, the Amended Requests here seek relevant information. As for the physicians' privacy interests, those may be preserved by the redaction of their names in any documents the Plaintiff produces and by the protective order entered by the Court on June 7, 2013. By requiring that the Plaintiff respond to the Defendant's Amended Requests 21, 23, and 24 with physicians' names (and physician groups' names) redacted, any waiver of the physicians' privacy interests will be avoided. Furthermore, should the Plaintiff believe that the current protective order is insufficient to prevent dissemination of the responsive documents or otherwise prevent waiver of the physicians' privacy interests, the Plaintiff may request amendments to the protective order. OSF's footnote is worth mention; namely, that if it attempted to misuse physician information, doing so could harm its own efforts to recruit and retain physicians. (Doc. 68-1 at p. 13 n.5).

In the Court's previous ruling on the motion to quash a subpoena to a non-party, it noted that OSF's discovery request meant that the non-party would be

shouldered with the clearly onerous burden of redacting personal identifiers from all responsive documents. However here, Methodist is a party to this litigation and the information sought is relevant, so the burden attendant with redaction is not so "onerous" as to militate against production.

Accordingly, the Plaintiff is directed to provide its redacted responses to the Defendant's Amended Requests 20, 21, and 24 within 21 days of this Order's date. Because the Plaintiff informed the Defendant subsequent to November 27, 2013[2] that it does not have any documents responsive to Amended Request 23, it will not be compelled to respond any further. In the event that the Plaintiff's continuing investigation reveals documents responsive to that request, it must promptly turn over those documents, redacted in accordance with this Order.

### B.    Amended Request 52

The parties remain at an impasse as to only two subsections of Amended Request 52. The Plaintiff objects to subpart (b) that seeks "Methodist's provision of inpatient hospital services or outpatient surgical services" as overly broad, vague, and unduly burdensome. The Plaintiff also objects to subpart (i) that seeks "all summaries, minutes, handwritten notes or other memorialization, in any form, of the contents or discussions of that meeting of the Methodist Board of Directors" for the same reasons. Methodist did state that it would produce

---

[2] The Plaintiff's Responses to Defendant's Amended First Set of Requests for the Production of Documents is dated November 27, 2013. (Doc. 68-9).

non-privileged, responsive Board minutes to the extent any existed. Furthermore, Methodist agreed to produce agendas, documents provided, exchanged or used during the meetings, and documents identifying attendees at those meetings that were relevant to the issues in this case including those that addressed: 1) Methodist's relationship with any member of the Group of 8 Payors; 2) Methodist's expansion or growth strategies; 3) Methodist's consideration of OSF; and 4) competition.

The Defendant argues that subpart (b) is not overly broad or unduly burdensome where the request uses the very two product markets that Methodist alleged are at issue in this case. It further argues that the Plaintiff has not made an effort to explain why responding to subpart (i) would be overly broad or unduly burdensome. The Plaintiff counters that responding to subpart (b) would be like requesting a law firm to produce all materials related to the provision of legal services, such that the request is too broad and not tailored to the issues in this case. The Plaintiff says in any event, the documents it has agreed to produce provide OSF the information it seeks in subpart (b).

Subpart (i) of the Amended Request 52 seeks duplicative information and is insufficiently tailored to the claims and defenses in this case, and subpart (b) is insufficiently tailored to the claims and defenses in this case. When considered with subpart (ii) seeking documents provided, exchanged or used during any

meeting of the Methodist Board of Directors and subpart (iii) seeking agendas created or used for any such meeting, subpart (i) seeks duplicative information, albeit within a much broader scope. This is particularly so when considered with the extent and variety of documents that Plaintiff has agreed to produce in response to the other subparts. The fact that subpart (b) uses terms "inpatient hospital services" and "outpatient surgical services" that Methodist itself used in the Complaint is not sufficient reason to justify the extremely broad scope of subpart (b). The Defendant does not attempt to explain why a more tailored request would be insufficient. This case involves two hospitals, and so a document request seeking *all* meetings of one of the party hospital's Board of Directors addressing the provision of inpatient hospital services or outpatient surgical services is overly broad on its face, without even taking into consideration what a search for responsive documents would entail.

The chance of duplication if the Plaintiff is compelled to respond to subparts (b) and (i) before the Defendant has reviewed the documents the Plaintiff has agreed to produce responsive to Amended Request 52, and the broad sweep of subparts (b) and (i) make those requests overly burdensome at this time. As the Plaintiff notes, the Defendant will have an opportunity to issue further, properly tailored discovery requests. The Defendant's Motion is therefore denied as to Amended Request 52.

## II.    Motion to Compel Discovery of UnityPoint (Doc. 69)[3]

A party issuing a subpoena has the burden to ensure that the subpoena does not impose undue burden or expense, and that is especially so where the subpoena is issued to a non-party. *Wetherell v ClimateMaster, Inc.*, 2009 WL 1470374, *2 (SDIL) (explaining that non-parties are particularly protected from undue burden where the burden likely outweighs the benefit of compelling compliance with a discovery request); *see also* FRCP 45(d)(1) (party or attorney issuing subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena"); *Cusumano v Microsoft Corp.*, 162 F3d 708, 717 (1st Cir 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs"). The non-party objecting to a subpoena on the basis of undue burden must present affirmative and compelling proof of the burden. *U.S. v Amerigroup Illinois, Inc.*, 2005 WL 3111972, *2 (ND Ill).

Federal Rule of Civil Procedure 26 still guides the inquiry into whether the discovery sought from a non-party is proper, namely, that the information sought is relevant or reasonably calculated to lead to the discovery of admissible

---

[3] As explained in UnityPoint's Response in Opposition to Defendant OSF Healthcare System's Motion to Compel Discovery (Doc. 75), the Defendant's Motion to Compel (Doc. 69) originally sought to compel the production of a category of documents in addition to the category of "Contracting Documents." However, UnityPoint agreed to produce documents in response to that other category, and so the Defendant filed a Notice of Partial Withdrawal of Motion to Compel Discovery of UnityPoint (Doc. 71) indicating its withdrawal of Sections II.B.I and III.B of its Motion to Compel.

evidence.  FRCP 26(b)(1); *Williams v. Blagojevich*, 2008 WL 68680, *3 (NDIL) ("The

scope of material obtainable by a Rule 45 subpoena is as broad as permitted

under the discovery rules").  Thus, the Court here must assess the relevance of

the subpoenaed information to the underlying case when inquiring into whether

the requested discovery imposes an undue burden on UnityPoint.  *Northwestern*

*Memorial Hospital v Ashcroft*, 362 F3d 923, 927 (7th Cir 2004); *Pacific Century*

*International, Ltd. v Does 1-37*, 282 FRD 189, 200 (ND Ill 2012).  Moreover, the

Court should specifically consider the needs of the case, the amount in

controversy, the parties' resources, the importance of the issues involved, and the

importance of the discovery in resolving those issues, and whether the discovery

sought is unreasonably cumulative or duplicative or can be obtained from some

other more convenient source.  FRCP 26(b)(2)(C)(i), (iii).

Here, the Defendant argues that the "Contracting Documents"[4] it requested

of UnityPoint are relevant to show that UnityPoint's own hospitals and third party

payors regularly lawfully engage in the very contracting practices that the Plaintiff

complains about in this lawsuit, and that such practices serve legitimate

procompetitive purposes.  Requests 15 and 16 seek such documents covering the

time period of January 1, 2006 to the present.  The Defendant disputes the undue

---

[4] This is the term the Defendant uses to refer to the collective of documents it sought pursuant to paragraphs 15 and 16 of the subpoena sent to UnityPoint, including any contract or agreement or proposed contract or agreement between any UnityPoint hospital and third party payor containing an exclusivity clause or any other provision making reference to any other hospital and/or another hospital's services.

burden objection, pointing out that UnityPoint is the sole member of Methodist, has the ability to appoint Methodist board members, and UnityPoint's and Methodist's boards now partially overlap.  The Defendant also disputes the duplicative objection where the Contracting Documents it seeks are not in Methodist's possession because the documents relate to the contracting practices of other UnityPoint affiliates.

UnityPoint is a health system based in West Des Moines, Iowa and includes 11 hospitals in Iowa, four hospitals in Illinois (two in Peoria, one in Moline, and one in Rock Island), and a health system in Madison, Wisconsin.  The Defendant refers to UnityPoint's affiliate hospitals in Peoria and "in similar areas in Iowa and Illinois."  UnityPoint says that OSF's request for Contracting Documents reaches far beyond the parties to this action, any reasonable geographic market, and the types of health insurance payors at issue in this case.

The Defendant has not sufficiently explained the relevance of the documents responsive to Requests 15 and 16 insofar as the documents may pertain to hospitals outside of Illinois, or at the very least, outside the tri-county area identified in the Complaint.  While it refers to UnityPoint's affiliate hospitals in Peoria and "in similar areas in Iowa and Illinois," the Defendant does not elaborate in its Motion to Compel to demonstrate the similarity.[5]  Nor has the Defendant sufficiently explained the relevance of the responsive documents involving additional and different payors from the Group of 8 Payors the Plaintiff and the Defendant used to

---

[5] The Defendant's counsel's November 25, 2013 letter discussing Requests 15 and 16 does not sufficiently do so either.  *See* ([Doc. 69-6 at p. 5](#)).

mutually narrow written discovery requests between them. UnityPoint notes that Methodist has already agreed with OSF to produce documents that relate to its contracting with the Group of 8 Payors and Methodist's Payor Advisory Group. There is no indication as to the relevance of responsive documents covering a period dating back to 2006, five years *before* Methodist's and UnityPoint's affiliation. The Court accordingly finds that Requests 15 and 16 reach too far in terms of timeframe and market scope.

Ultimately, the burden that responding to Requests 15 and 16 would impose upon UnityPoint outweighs the attenuated relevance of the responsive documents. UnityPoint has sufficiently articulated why just the search itself for responsive documents to Requests 15 and 16 would be burdensome. The Court finds that it would be unduly burdensome for UnityPoint to respond to Requests 15 and 16, and so the Motion to Compel Discovery of UnityPoint is denied. The Court need not address UnityPoint's argument that Requests 15 and 16 could invade the privacy of non-parties to this lawsuit where the Court has already determined that responding to the Requests would be unduly burdensome. Finally, whether narrower requests in amended versions of Requests 15 and 16 would be received more favorably by UnityPoint is not for the Court to inquire into at this time.

Entered on April 22, 2014

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE