1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF ILLINOIS

3

METHODIST HEALTH SERVICES    )
4  CORPORATION,                )
                              )
5          Plaintiff,          )
                              )  Civil No. 13-01054
6      vs.                     )
                              )
7  OSF HEALTHCARE SYSTEM,      )
   d/b/a SAINT FRANCIS         )
8  MEDICAL CENTER,             )
                              )
9          Defendant.          )

10          TRANSCRIPT OF PROCEEDINGS
     BEFORE THE HONORABLE JONATHAN E. HAWLEY
11               MOTION HEARING
                MAY 26, 2015
12              PEORIA, ILLINOIS

13  APPEARANCES:

14  For the Plaintiff:       RICHARD T. GREENBERG, ESQUIRE
                            ANGELO M. RUSSO, ESQUIRE
15                          McGuire Woods, LLP
                            77 West Wacker Drive, Suite 4100
16                          Chicago, Illinois 60601
                            (312) 750-5755
17

18  For the Defendant:      BARBARA T. SICALIDES, ESQUIRE
                            BARAK A. BASSMAN, ESQUIRE
                            FRANK HASTINGS GRIFFIN IV, ESQUIRE
19                          Pepper Hamilton, LLP
                            3000 Two Logan Square
20                          Philadelphia, Pennsylvania 19103
                            (215) 981-4783
21

22
           Jennifer E. Johnson, CSR, RMR, CRR
23            U.S. District Court Reporter
              Central District of Illinois
24

Proceedings recorded by electrical sound recording;
25  proceedings recorded by mechanical stenography from
    said recording; transcript produced by computer

1          THE COURT:  Good afternoon.  This is Judge

2   Hawley.  We're here on the record in *Methodist*

3   *Health Services vs. OSF HealthCare Systems*, Case

4   13-CV-1054, to consider OSF HealthCare System's

5   motion to amend its answers and affirmative

6   defenses.

7          For Methodist, do I have Angelo Russo on the

8   call?

9          MR. RUSSO:  Yes, Your Honor.

10         THE COURT:  And Richard Greenburg?

11         MR. GREENBURG:  Yes, Your Honor.

12         THE COURT:  And for OSF, Barak Bassman?

13         MR. BASSMAN:  Yes, Your Honor.

14         THE COURT:  And Barbara Sicalides?

15         MS. SICALIDES:  Yes, Your Honor.

16         THE COURT:  And Frank Griffin?

17         Frank Griffin?  Is he not on the call?

18         MR. GRIFFIN:  Yes, Your Honor.

19         THE COURT:  Oh, okay.  So --

20         MS. SICALIDES:  He's a little more soft-spoken

21   than the rest of us, apparently.

22         THE COURT:  Okay.  So, for Methodist, who's

23   going to be primarily arguing?

24         MR. GREENBURG:  Richard Greenburg.

25         THE COURT:  Okay.  And, Miss Sicalides, are

1 | you arguing primarily for OSF?

2 |     MS. SICALIDES:  Yes, Your Honor.

3 |     THE COURT:  Okay.  Thank you.

4 |     So, I've read all of the various documents

5 | filed in the case, including the original motion,

6 | the response, the reply, the surreply, Judge

7 | Darrow's order and the various attachments.

8 |     We'll start with you, Miss Sicalides.  One

9 | question I have is, What effect would a grant of

10 | your motion have on Judge Darrow's order on the

11 | judgment on the pleadings?

12 |     MS. SICALIDES:  Your Honor, we don't believe

13 | that it would have an effect because we are still

14 | admitting to the fact that there is generally the

15 | difference in the level of profitability of

16 | patients that are covered by government plans or

17 | covered by commercial insurers.

18 |     Judge Darrow ruled that as a matter of

19 | (inaudible) the plaintiff had adequately pled the

20 | market, but she certainly left open for summary

21 | judgment and/or at trial litigation of this issue.

22 |     So, because we continue to admit difference in

23 | the general level of profitability, we don't

24 | believe that it affects Judge Darrow's ruling,

25 | particularly when you look at our answer to

1  paragraph 20 of the -- that we specifically deny

2  that there are no reasonable substitutes or

3  alternatives --

4      THE COURT:  Well --

5      MS. SICALIDES:  -- in our many other denials

6  or answer to the defined product market.  So, we

7  believe that the argument that Methodist had

8  continues (inaudible) this argument based on our

9  admissions and the Court can --

10     THE COURT:  Hello?

11     MS. SICALIDES:  Yes?

12     THE COURT:  I think you're on speaker.  You're

13  cutting -- you're starting to cut in and out a

14  little bit; it just happens sometimes if you're on

15  speaker phone on the other line.  So, I missed the

16  last part of what you said, like the last 30

17  seconds.

18     MS. SICALIDES:  It was probably just a

19  reiteration of what I said previously.

20     THE COURT:  Okay.

21     MS. SICALIDES:  Probably just summing up, just

22  basically that we deny paragraph 20 of the

23  complaint which says there are no reasonable

24  substitutes; that we believe there are reasonable

25  substitutes, including government payers.  And so

1  UnityPoint Methodist can continue to argue that we

2  admitted that there is generally a different level

3  of profitability between government payers and

4  commercial payers because we will continue to admit

5  that.

6      THE COURT:  Well, Judge Darrow says on page 14

7  of her order, "Here, Methodist has alleged, and

8  Saint Francis has admitted," and then she says,

9  "that access to privately insured patients is

10  critical to a healthcare provider's long-term

11  sustainability in light of the comparatively low

12  prices providers are required to charge patients

13  covered by government plans for the same services,"

14  and she cites the very paragraphs of your answer

15  that you intend to amend or would like to amend.

16      And then she says, in the next paragraph, "In

17  light of such allegations and admissions, the Court

18  cannot find, as a matter of law, that the sales,"

19  et cetera, et cetera.

20      So, I understand that -- your argument that

21  you're saying that this order doesn't necessarily

22  affect your ability to challenge the legal

23  implications of the facts admitted in the answer as

24  to what the legal effect of those are, but it's

25  kind of hard to see, given how she's phrased this

order, that if I were to allow amendment of the
answer it doesn't affect her order because -- as a
matter of pleading. I understand you're saying,
"Look, they" -- I think you're saying, "They've
established the threshold, according to Judge
Darrow, that as a matter of pleading they can get
past a motion to dismiss, but that still leaves it
open for us to argue at summary judgment and trial
that as a matter of fact they have not met their
burden."

Is that a fair assessment of what you're
saying?

MS. SICALIDES: Well, the question of whether
government payers are included in the market
definition is more than just a question of fact.
It's a question of law, and it's a critical element
of the claim.

THE COURT: Right. I understand that and --
but the facts that are admitted in 93, 94 and 98
are not necessarily dispositive on that question.
It's just as a matter of pleading Judge Darrow said
it's enough to get past a motion to dismiss.

Would you agree with that?

MS. SICALIDES: Right.

THE COURT: Okay.

MS. SICALIDES: And I do agree with that. And
I think that the judge's opinion is what it is,
obviously. We're not arguing about that here.

Our, our view, however, is that it's pretty
clear that what we intended -- and it's clear from
all the depositions that have been taken of our
witnesses as well -- that the answer was intended
to admit that there's a difference in the level of
profitability, and our witnesses will continue to
take that position, and our admission in the newly
proposed answer will, will continue along those
lines as well.

And I think what -- the judge's decision
really just took that profitability question and,
and the brief that had been provided to her by
Plaintiff, and she wrote it in a summary of alleged
facts. I don't think she was -- well, I don't want
to -- I don't want to argue that motion again, so
-- but I didn't -- I didn't -- we did not interpret
her opinion as making a final finding on the facts
related to government payer inclusion in the
market.

THE COURT: Right, and I agree with that. I
think -- I mean, it seems to me your concern is
that you don't want your answers construed as some

1  sort of admission that the relevant market has been
2  properly defined, right?
3      MS. SICALIDES:  Correct.  Since we --
4      THE COURT:  Right.
5      MS. SICALIDES:  -- denied it many, many places
6  throughout our answer.  Exactly, Your Honor.
7      THE COURT:  Right.  And, and I get that.  And
8  so -- and, in fact, those admissions to the facts
9  are not an admission to the legal question of
10 whether or not -- the legal and fact question of
11 whether or not a relevant market has been properly
12 defined.  That's a question that Judge Darrow has
13 said, for pleading purposes, it survives summary
14 judgment.  She, in part, relies on those admissions
15 but not solely.  But it doesn't eliminate the issue
16 from the case, so -- would you agree with that?
17     MS. SICALIDES:  I agree with that.  I agree
18 with that, Your Honor.  I think the -- that
19 particular sentence that you wrote was more of a
20 summary actual reference or statement or answer.
21 Just like the paragraph says.  I'm not suggesting
22 that you're incorrect in that regard at all.
23     THE COURT:  Right.  So, my concern is, is
24 that, you know, given her order -- I guess one of
25 my concerns is, given her order, to change the

answers to the paragraphs which she relies on in
her order on the motion to dismiss, at least in
part very explicitly, it seems like that would then
alter her analysis on the motion to dismiss to the
extent that I would think you'd almost be compelled
to file a new motion to dismiss.  You --

MS. SICALIDES:  No, Your Honor.  We have no
intention of filing another motion to dismiss.

THE COURT:  Okay.  That was one question I
had.

MS. SICALIDES:  Yeah, we have no intention of
doing that, Your Honor.  We are moving toward
summary judgment and trial, if necessary.

THE COURT:  So, if the Court agrees with you
that the admissions in the relevant paragraphs
we're discussing don't bar you from arguing on
summary judgment or at trial that Methodist has
failed to define a relevant product market, why is
the amendment necessary?

MS. SICALIDES:  Well, Your Honor, we -- the,
the Federal Rules of Civil Procedure, particularly
with respect to pleadings, are intended to
facilitate a proper decision on the merits and are
not intended to be used for gamesmanship or to
punish counsel for some sort of misstep.  That's

1    basic process from the Supreme Court decisions and
2    the rules themselves.

3         And in our -- the briefing in this matter, the
4    briefing on the motion for judgment (inaudible),
5    every other interaction we've had in this case,
6    it's quite evident that that's exactly what
7    Plaintiff intends to do with the -- our answer in
8    front of a jury.  And we believe that the jury
9    should not be subject to that type of gamesmanship
10   and that we should be permitted to answer in the
11   way we intended and so that it would be clearly
12   read and clearly understood by a jury.

13        Doesn't prevent Methodist from arguing that
14   government payers shouldn't be included in the
15   market because they are less profitable or whatever
16   other bases they might choose to argue.  They're
17   free to argue that.

18        THE COURT:  But you're not denying the facts
19   that are contained in those -- even looking at your
20   amendment, I mean, you're still admitting the
21   essential facts.  You're just trying to clarify
22   that you don't think those facts stand for the
23   legal proposition to which Methodist attributes
24   them.  Isn't that true?

25        MS. SICALIDES:  Well, I would --

1    THE COURT:  I mean, that's why you refer to it

2  as clarifying does no more than memorialize the

3  position that OSF took on the motion for judgment

4  of the pleadings; that's footnote one, page two of

5  your motion.  Page 14, you say you're simply

6  clarifying.  Your reply says, no, it has no effect

7  on summary judgment or trial.

8       So, I mean, isn't that accurate?

9    MS. SICALIDES:  Well, so I would agree that

10  we're not denying the facts related to the

11  profitability, but there are adjectives and other

12  words used in those -- in the complaint that have

13  been -- have been used to mischaracterize what we

14  believe to be we're admitting.

15    THE COURT:  Well, the only --

16    MS. SICALIDES:  We believe they're supposed to

17  be clear as to what we were admitting and what we

18  weren't.

19    THE COURT:  Well, you say that the terms -- if

20  you want to talk about adjectives as to number 93,

21  you say that the word "substantial" and

22  "significant," those are the adjectives you're

23  referring to?

24    MS. SICALIDES:  As our -- yes, those are two.

25    THE COURT:  And you say they're vague.

1    MS. SICALIDES:  Right.  And what we intended

2  when we admitted it is, obviously, quite different.

3  And from what every one of our witnesses testified

4  or virtually every one is quite different from the

5  way in which Methodist is saying we have admitted,

6  very different type of admission.  And, and,

7  therefore, we want to clarify it, not in front of

8  the jury having a semantic debate.

9    But we never -- and it would happen because we

10  never intended that our words be used in that way,

11  particularly given our full response to all the

12  paragraphs in the complaint and our affirmative

13  defenses.

14    THE COURT:  Well, you mentioned gamesmanship

15  so let's get to that a little bit, about the good

16  cause standard.  I've got a couple questions about

17  the timing.

18    So, it's your proposition that the minute

19  entry that adopted or approved the plan submitted

20  by the parties, because it did not include the

21  deadline for amending the pleadings or joining

22  parties, did not adopt or approve that portion of

23  the plan.  Is that your position?

24    MS. SICALIDES:  Your Honor, we have not

25  interpreted the order in the way in which Methodist

1   has interpreted it, but we understand that, you
2   know, it could be interpreted that way by you.  And
3   we're not going to -- and that -- we did not read
4   the order in the way that Methodist has and, and
5   for the reasons that you just stated.  It wasn't --
6   it was -- maybe we misread it.  I mean, we're not
7   trying to -- we're not really trying to play a game
8   here.  It's possible we just misread it.

9       THE COURT:  Okay.  Well, I, I can say, you
10  know, very clearly that that is the way we always
11  conduct -- both Judge Gorman and I, we -- if the
12  plan is agreed and we don't have an issue with the
13  dates, we adopt the plan as adopt -- as submitted
14  by the parties which includes all the deadlines,
15  and we include certain deadlines in the minute
16  entry for purposes of the Court's own tracking.
17  There are certain deadlines we track very
18  carefully; there are others we don't.  I mean, this
19  is a standard minute entry entered in virtually
20  every single case.  It certainly -- that's why it
21  uses the term "approve the plan."  So, clearly
22  there was a deadline in this case for the amendment
23  of pleadings, which was in June of 2014.  So, you
24  know, that I do find, that there was a deadline.
25  And I don't think that can really be disputed.

1   But then my second question related to that is

2   that in -- on April 11th, 2014, Methodist filed its

3   response to your motion to dismiss.  They cite, on

4   page three of that response, these very three

5   paragraphs that are now at issue.  At that point in

6   time, you know, it was -- you were still well

7   within the deadline for amending the pleadings.

8   You could have asked to amend the pleadings.  It

9   happens all the time on motions to dismiss.  People

10  file the motion to dismiss; the other side

11  realized, "Whoops, we missed something," or, "We

12  did this wrong," and they file a motion to amend

13  the complaint.  And then it's typically granted,

14  and then it changes the analysis on the motion to

15  dismiss.

16  So, here -- and you admit as much in your -- I

17  think it's your reply, that you pretty much

18  thought, "Well, let's wait and see if we win."  And

19  then as soon as you lost, you filed a motion to

20  amend it.

21  Why didn't you move to amend it as soon as you

22  were put on notice, which was within the period for

23  amending the pleadings, when you saw that response?

24  And I read your -- the pleadings.  There's no hint

25  or a suggestion or a request in any of those

1   pleadings to amend the answer at that time.

2        What's your answer to that?

3        MS. SICALIDES:  Well, I mean, the answer is

4   what we said in our brief which is we didn't want

5   to -- having already gone to substantial expense,

6   et cetera, and already put all the motion in front

7   of the judge -- to disrupt the process.  And

8   because we thought our position was completely

9   plain in our briefing, we didn't see that any sort

10  of -- we didn't (inaudible) would be prejudicial in

11  any way.  We thought it was 100 percent clear to

12  the plaintiff what our position was, I mean,

13  certainly through the depositions of our witnesses,

14  because they took exactly the same position that

15  we're taking in our proposed response, our proposed

16  amended answer.

17       But given the many denials in the answer,

18  honestly, you know, Your Honor, we thought that it

19  was clear what we were saying.  But, you know, it's

20  all -- it's not clear, obviously, because Plaintiff

21  has interpreted it in a different way.

22       THE COURT:  But you see the problem.  By -- I

23  understand what you're saying about efficiency, but

24  I, I don't necessarily agree with you that allowing

25  you to amend the answer is going to have absolutely

1  no effect on an order where the district judge
2  specifically relies on the admissions that you made
3  that you now want to amend.  So, by sitting back
4  and doing nothing and then waiting months for the
5  district judge to rule, and it turns out she rules
6  in her order and she specifically cites those
7  paragraphs and relies upon them, which then, of
8  course, immediately prompts you to file a motion to
9  change those answers, has now created a much more
10 difficult problem because I, I, frankly, don't
11 agree with you that allowing you to amend the
12 answer at this point doesn't completely render her
13 motion to dismiss or her order on the motion to
14 dismiss somewhat of a nullity.  But, okay.

15     MS. SICALIDES:  In -- in -- sorry.  Didn't
16 mean to interrupt, Your Honor.

17     THE COURT:  No, I'm done.

18     MS. SICALIDES:  I mean, the ruling is the
19 ruling.  We're not, not going back to argue that
20 she should change her ruling.  We're not going back
21 to file another motion for judgment on the
22 pleadings, so --

23     THE COURT:  Yeah, but her ruling relies on
24 these three paragraphs that you now seek to change.
25 So, it does -- it changes the analysis because the

1  underlying admissions on which she explicitly
2  relies are, are -- you're trying now to withdraw.
3      MS. SICALIDES:  I believe she made a statement
4  of fact that were read in light of and in the most
5  positive light to the plaintiff.  I don't believe
6  that she -- I mean, I, I don't believe that it was
7  a finding that was intended to bind the case and us
8  forever, that we can't go into court and our
9  witnesses can't testify --
10      THE COURT:  I, I agree with that.  I don't
11  disagree with that.  I, I totally agree with you
12  that you can -- this is judgment on the pleadings.
13  It's just about whether it was sufficiently pled.
14  And I don't disagree with that, which is part of
15  the reason why I don't know why it's even necessary
16  for going -- looking forward to amend because I
17  agree that your -- that for purposes of pleading,
18  yes, including the admissions you made, the case
19  survives the dismissal stage.  It doesn't tell us
20  whether it will survive summary judgment; I agree
21  with you.
22      But you can't avoid the fact that as it
23  relates to the motion to dismiss, she relied
24  specifically on those paragraphs.  And to now
25  change them, it does change the analysis she made

1  as it relates to the motion to dismiss.  And I

2  would think if you think that these changes have

3  any significance -- and, in fact, your, your

4  proposed amendments, they each say -- if I go to --

5  you say right in there OSF specifically denies that

6  allegations of paragraph 93 establish that UPM has

7  pled an adequate market; number 94, has pled an

8  adequate market.

9       So, these relate -- these amendments relate

10  specifically to the pleadings standard.  So, I

11  don't know how that doesn't change her order, but

12  we disagree about that.  Okay.

13       MS. SICALIDES:  And, I'm sorry, we denied that

14  repeatedly so I understand that it's now here with

15  respect to particular paragraphs, but we denied it

16  over and over again.

17       THE COURT:  Right.  I know you've denied it,

18  and, and so Judge Darrow says she gets that you

19  denied it.  I agree.  It's clear you've been

20  denying it from day one.  I don't think these

21  paragraphs are admissions, that you think they've

22  adequately pled them.  You have a different

23  interpretation.  Judge Darrow has said they have

24  adequately pled.  But it doesn't mean that they

25  have established for all time, as you said, this

1  question which, again, just seems like we're past

2  the pleading stage now so what's the purpose of

3  amending the pleading?  I just have a difficult

4  time seeing that, but -- okay.  I'll let you --

5      MS. SICALIDES:  I understand, Your Honor.

6      THE COURT:  I mean, if I deny your motion,

7  what, what happens?  What's the negative effect for

8  you?

9      MS. SICALIDES:  Then in front of a jury we're

10  going to spend a lot of time arguing over whether

11  or not we admitted in those paragraphs that it is,

12  in fact, an adequate market.  That's what they're

13  -- they say we said, and we didn't say that.  So,

14  we just want to be clear what it is we're admitting

15  to.

16      THE COURT:  But you didn't say -- what you

17  said was -- you didn't say it was -- you said it

18  was -- find the operative language.  You said

19  they're not adequate substitutes, right?  That was

20  the admission.  That's not the same as saying

21  they're reasonably interchangeable, right?

22      MS. SICALIDES:  I agree with that, Your Honor.

23      THE COURT:  Right.  So, I don't -- you know,

24  if you're reading these three paragraphs to say

25  it's an admission that they're reasonably

interchangeable, I agree with you; you have not admitted that in these paragraphs. You've admitted they're not adequate substitutes, but exactly what that means is up in the air. But it's not an admission to the legal proposition as it relates to reasonably interchangeable, which is all you're really trying to say anyway, isn't it, that you're not admitting that?

MS. SICALIDES: Well, we're not -- right, we're not admitting that.

We are admitting what adequate means. We believe that we have a right to say, define what "adequate" means, given how it's been misinterpreted by Plaintiffs.

But we're -- but, Your Honor, I mean, we agree that we are still able to make these arguments regarding the market definition and fully intend to do so --

THE COURT: Right.

MS. SICALIDES: -- regardless of your ruling on this motion and, frankly, our witnesses -- that's just the way the business is run. And, you know, over 50 percent of the volume at Saint Francis Medical Center Children's Hospital is government payers. So, to -- you know, of course

it's going to be part of the case regardless of
your ruling; we understand that.

But we were doing it in hopes of avoiding a
skirmish -- more than one skirmish, I would
imagine, in front of the jury that really simply
creates confusion. When we're admitting something,
you know, we want to be clear what we're admitting,
and we thought we were clear, but, according to
UnityPoint Methodist, we weren't.

THE COURT: Okay. Anything else you want to
add before I let Methodist talk?

MS. SICALIDES: I certainly very much
appreciate your time and, and effort on this
motion, Your Honor.

THE COURT: Okay.

Mr. Greenburg?

MR. GREENBURG: Yes.

THE COURT: So, you know, you make a lot of
noise about all the discovery that would have to
occur if this change were made. I don't -- I don't
get that. That, that seems like a red herring.

You really think you'd have to re-open
discovery and, given the nature of the difference
between what they've admitted and what they're
still admitting in the amended answer, that it

1  would require some, you know -- why would it
2  require so much new discovery?
3      MR. GREENBURG:  Well, we disagree that their
4  -- I mean, I understand they say that regardless of
5  whether their motion is granted it will have no
6  effect on their summary judgment or trial
7  arguments, but we, we think it does.  I mean, I
8  think what -- you know, they cherry-pick one
9  person's testimony -- very limited testimony.  And
10  we, we did ask some general questions about this
11  for context, but, you know, for, for -- for two
12  years we didn't have to get specific and challenge
13  anymore because we had judicially admitted facts so
14  we didn't -- we didn't need to explore these things
15  anymore.  And so I think --
16      THE COURT:  Aren't they still -- aren't they
17  still -- they're not changing these from outright
18  admissions to outright denials.  They're still
19  admitting most, if not all of the operative facts.
20  They're just trying to avoid having these three
21  paragraphs read as an admission to the legal
22  proposition, which I know you're using these
23  admissions to support your argument that these
24  admissions amount to an admission as to the nature
25  of the relevant market.  But they're -- they, they

take a different view of that, but they're not
changing the -- their admission as to what the
facts are.  I mean, these are pretty innocuous
paragraphs that, as far as, you know, are hospitals
-- is it more profitable for hospitals to serve
patients with commercial health insurance than to
serve patients covered by Medicare, Medicaid?  I
mean, they're still admitting that.

MR. GREENBURG:  Well, but they're -- they,
obviously, think it's pretty significant or else we
wouldn't -- we wouldn't be here talking, talking
about it.

THE COURT:  Well, that's the irony, is they
say, "It's really not very significant," and you
say, "Oh, yes, it is."  So, it's sort of backwards.

MR. GREENBURG:  I'll tell you why it is:
Because what they're trying to do is, in a very,
you know, roundabout way, appeal Judge Darrow's
order without appealing -- without having to appeal
the order.  They want to change the underlying --
(inaudible) the underpinnings of Judge Darrow's
order so that it becomes irrelevant to the case
going forward as opposed to being the law of the
case going forward.

It's not that they're worried about what we

1  may argue before a jury or at summary judgment

2  because, as they say, they can argue whatever they

3  want. And, you know, we'll submit that the purpose

4  of an answer is not to clarify legal positions but

5  to decide which facts are at issue.

6      But what they want to do is, if we cite a

7  portion of Judge Darrow's opinion in opposition to

8  part of their summary judgment motion, they want to

9  say, "No, no, no, no, no, that, that decision was

10  made on the basis of different facts. We don't

11  admit that anymore."

12      And I -- we think the word "substantial" and

13  "significant," which they now want to change from

14  outright admissions to outright denials, is

15  significant. And it's significant to our expert.

16  It's significant from the point of view of an

17  economic analysis. And, you know, we're, we're,

18  we're totally sandbagged here.

19      I mean, it seems like they made a strategy

20  decision. They knew about this two months before

21  the deadline passed, and they could have done three

22  things: They could have moved to amend; they could

23  have at least alerted the judge to the fact that

24  the, the deadline was coming up; or they could have

25  moved to amend the deadline. And instead what they

did was they made the strategy decision, "I'm not going to do that because we're going to win."

Okay. Well, they guessed wrong. And I guess my point is you don't get a do-over. And that's exactly what they're -- that's exactly what they're asking for. You cannot -- in no way can you say they proceeded diligently. I mean, they've known about this for, you know, over a year, and they didn't do anything about it. And so, I mean, we do think we're prejudiced.

But even on the other standard, of their amendment being futile -- which they seem to admit and we admitted today and in terms of good cause were they diligent, you know, regardless of, you know -- and not blaming them for making this strategy decision and saying that that was unreasonable, but in no way were they diligent in seeking to clarify this amendment. I mean, they waited until discovery was over, and we're on the eve of our expert report being due. Requires -- it could require extra work from our expert, extra cost. And if we have to re-open discovery to redepose, you know, 5, 8, 10, 12 witnesses, however many were -- who testified about this, and there were several CEOs and several CFOs and other

1  financial people who testified about this, then

2  that's going to necessitate a change in the trial

3  date and that also prejudices our client.

4      I mean, we all -- we all worked very, very

5  hard.  We -- both sides, plaintiff's counsel and

6  defense counsel worked very, very hard under a

7  tight schedule to get to this point, and the last

8  thing we expect to happen is that the underlying

9  ground we're standing on changes.

10     You know, it's interesting.  They didn't cite

11 one example of testimony from anyone that said,

12 "Well, because of this person's testimony, we need

13 to change our answer."  They don't even cite that.

14 I mean -- and the reason they don't is because they

15 can't.  It's not true.  I mean, but be that as it

16 may, I mean, we're totally sandbagged here.  And --

17     THE COURT:  I guess -- well, I have to -- all

18 right.  So, it's, it's not a secret that they have

19 consistently and, in fact, alleges in their

20 affirmative defense that they don't agree that you

21 have properly defined the relevant product market,

22 right?  I mean, that's not a surprise to you.

23     MR. GREENBURG:  Absolutely.  And that's a

24 legal argument that's going to be, you know, argued

25 in summary judgment and then will be addressed in

trial.

THE COURT: Right. So, if -- Judge Darrow's order is -- deals with the pleadings, and for -- you agree for purposes of summary judgment, they still can argue -- if I don't allow them to amend the answer, you still agree that Judge Darrow's order as it relates to the pleadings is not dispositive as to what her ruling would be at summary judgment or the issue at trial.

Do you agree with that?

MR. GREENBURG: On the -- on the question of what the relevant market is, I absolutely agree with you.

THE COURT: Okay.

MR. GREENBURG: That is -- that's a factual matter that hasn't been presented to her yet.

THE COURT: Okay. Okay.

MR. GREENBURG: But, but one thing that -- I do want to correct one thing. While it is true that on a motion for judgment on the pleadings, well-pleaded facts are to be construed in our favor, I don't think that applies to judicial admissions. I mean, Judge Darrow, you know, presumably applied the correct standard on allegations. But when you're looking at judgment

1  on the pleadings, you're looking at the complaint
2  and answer, so she was looking at admissions.
3  Admissions of fact.  And so I think that's pretty
4  significant.  It's not just that she was, you know,
5  construing things in our favor.  We made an
6  allegation -- three allegations, and they said,
7  "Admitted, admitted, admitted."

8  And I don't -- I think if I start an argument
9  before a jury that that sentence means something
10 other than what it's quoted as, they'll object, and
11 Judge Darrow will say, "Sustained."  I mean, you
12 know, the language is what it is.

13 THE COURT:  Right.  But at the pleading stage,
14 she also has to -- you've got the admitted facts,
15 but then she also must draw any reasonable
16 inferences from those facts in favor of the
17 non-moving party, right?

18 MR. GREENBURG:  Correct.

19 THE COURT:  And so that's where the inference
20 is at the pleading stage which she's drawing may
21 have a different effect as opposed to at some later
22 stage in the case.  So, yeah, facts are facts.  If
23 they're admitted by OSF, they're admitted.

24 But what inferences you draw as to the legal
25 consequences of those facts would vary depending on

1  the standard that you're applying, which is
2  different at a motion to dismiss stage as opposed
3  to later stages in the case.

4      MR. GREENBURG:  Absolutely.  I think, you
5  know, inferences one might draw on a motion for
6  judgment on the pleadings can easily be, you know,
7  contested, contravened, disputed by virtue of facts
8  which are -- yes, I --

9      THE COURT:  Right.  And I think that's what
10  Judge Darrow was actually getting at when she says,
11  "In light of such allegations and admissions, the
12  Court cannot find, as a matter of law, that the
13  sales of inpatient hospital and outpatient surgical
14  services to commercial health insurers are
15  interchangeable with the sales of these same
16  services to government payers."

17      So, she's making the inference in favor of
18  Methodist based on those admissions at this stage
19  in the case.  That's how I interpret that.

20      MR. GREENBURG:  Yes.

21      THE COURT:  Okay.

22      MR. GREENBURG:  We -- I agree.

23      THE COURT:  Okay.  Anything else you want to
24  add?

25      MR. GREENBURG:  No, you know, I think all the

other points we, we addressed in our opposition and in our surreply. And we appreciate your letting us file the surreply.

THE COURT: Okay. Miss Sicalides, since it's your motion, if you want to have any brief rebuttal?

MS. SICALIDES: No, Your Honor. I think that based on the colloquy of how, in fact, the judge would have viewed our answer and our admissions --

THE COURT: I'm sorry. You cut out on me again, Miss Sicalides.

MS. SICALIDES: I'm sorry. No, Your Honor. I think that based on the conversation, we've made all of our points and specifically have answered your questions. Appreciate your time.

THE COURT: Okay. Well, here's my ruling:

First of all, on the question of the proper standard, I do find that it is a good cause standard. While the minute entry did not specifically list the date for the amendment of the pleadings, it was in the plan; the minute entry adopted the plan; it's the standard practice of the Court to do so. I think it's really not -- it's beyond dispute that the deadline in this case for amending the pleadings was, in fact, the deadline

which the parties proposed and the Court adopted
when it originally set the schedule in this case.
That deadline was on -- looking here -- June 20th,
2014.

So, it is OSF's burden to establish good
cause.  One of the issues here is timing.  The
motion to amend the pleadings comes -- the motion
to amend the answer comes significantly after the
deadline has passed and after Judge Darrow ruled on
the motion to dismiss.  It seems to me that the
latest point in time when OSF should have made a
motion to amend the pleadings is when it became
acutely aware on April 11th, 2014, that Methodist
was using the admissions in the paragraphs that are
now under discussion to support its argument
regarding the relevant product market.  But had OSF
done so at that time, the district judge could have
-- it was well within the period for amending the
pleadings, and, in fact, I think the Court would
have been compelled to allow the amendment of the
pleadings because it was prior to the expiration of
the deadline.  It would have then allowed the
district judge to rule on any motion to dismiss
based on the answers that are existent in the case.
One of the reasons for having a deadline for the

amendment of pleadings and the joining of the
parties is to allow for the orderly administration
of the case so that parties know where they're at
for purposes of discovery, for purposes of motions
to dismiss, and for the district judge to make a
ruling.  The fact is that by waiting until the
district judge ruled on the motion to dismiss and
then filing this motion, it does severely affect
the administration of this case.

I do not agree with OSF that allowing it to
amend the answer at this stage does not affect the
order entered by Judge Darrow.  Judge Darrow's
order is very explicit in relying on these three
paragraphs for purposes of the motion to dismiss.
And if OSF now were allowed to go back and change
those answers, I cannot see how it does not
undercut the essential reasoning in Judge Darrow's
order.  So, I think that is a, a very, very serious
issue in the case and cuts very deeply against
allowing the amendment of the answer.

You know, I also think that the timing issue
is one where -- you know, Methodist claims that
there would need to be a lot of additional
discovery.  I don't believe that to be the case,
but I do think that there's enough in the change,

1   in the language even as it relates to "significant"

2   and "substantial" that you're now objecting to as

3   vague, it would require, in my opinion, or should

4   allow some additional discovery.  I don't think

5   it's nearly as extensive as Methodist claims it

6   would be, but I do think it would probably merit

7   some additional discovery because you do have facts

8   that were not in contest that are now in contest.

9       And again, as to the timing, the -- we are now

10   in a period where fact discovery has closed which,

11   again, as you all know I've been very sensitive to

12   the schedule in this case and intend to move this

13   case forward, which is all the more reason why we

14   need the orderly administration of the various

15   deadlines.  And opening discovery again for that

16   purpose, even if it's limited, throws the entire

17   schedule in this case off, which is another reason

18   which I believe militates against granting the

19   motion to amend the pleadings.

20       I also think that to a certain extent which

21   actually, I think, favors OSF as far as agreeing

22   with them that the significance of this amendment

23   in one sense as it relates to their concern about

24   what these admissions mean, I do think it's not --

25   these admissions do not stand for the proposition

that OSF has admitted somehow that Methodist has defined the -- properly defined the relevant product market. OSF states, as I already noted, footnote one of page two, "This does nothing more than memorialize the position it took on the motion for judgment on the pleadings." I agree with that. Page 14, "It's simply a clarification." I agree with that. In the reply, page two, "This has no effect on summary judgment or trial."

You know, to the extent that Methodist has or does interpret the admissions to the facts as an admission to the legal proposition to which Judge Darrow drew the inference for purposes of the pleading stage does not mean that these facts establish once and for all that a relevant product market was properly defined. That is a question of fact that I am sure you'll find out at the summary judgment stage and trial if, if we get to that point.

So, I don't think denying the motion to amend the answer in any way prejudices OSF to sort of foot the analysis on its head at the -- in this case going forward. But I do think it, it creates a serious problem for this case looking backward at the pleading stage which should be and is currently

resolved; and to grant the motion would throw it
into some uncertainty, in my opinion.

So, for those reasons, I am going to deny the
motion to amend the answer.

On a separate question -- and I know this is a
very complicated case, and seeing a way to resolve
this case short of slogging it through to the very
end on both sides is difficult to see.  On the
other hand, there is no case that is not capable of
resolution outside of court no matter what that
resolution may look like.

Has there been any discussion between the
parties in this case of attempting to find some way
to navigate a resolution of this case short of a
final judgment in one form or another on the merits
in this case?

I'll ask you first, Miss Sicalides.

MS. SICALIDES:  Your Honor, very early on, I
think when we were putting together --

THE COURT:  I'm sorry?

MS. SICALIDES:  At one point in the
litigation, as required by the rules, asked the
plaintiff for a demand in an effort to determine
whether an early resolution was possible, and
Plaintiff did not give us a demand.  Plaintiff

responded by asking for certain injunctive relief
and saying that, you know -- and Mr. Greenburg can
better characterize it and remember than I can at
this point, but the -- for, for certain reasons --
and he had a reason; I just can't recall what it
was -- they chose to not make a monetary demand.
And faced with that kind of a circumstance,
impossible for OSF to respond, it would really be
negotiating against themselves, and they're not
prepared to do that.

THE COURT:  Mr. Greenburg?

MR. GREENBURG:  Yeah, my, my recollection is,
is similar to what Miss Sicalides said.  We were
open to the concept of talking resolution at the
very, very beginning, like, like she said, but
before we talked -- but we needed something in
addition to a monetary payment.  And so before we
got to that point, we asked if there was any
possibility that they would consider these other
conditions, and they wouldn't.  And so it didn't --
it didn't get anywhere.

Having, having said that, you know, Methodist
is always open to, you know, any reasonable
resolution of the case short of trial.  I think
Miss Sicalides said the same thing, in general, you

1  know, about her client.  So -- but, but other than

2  the -- those initial exchanges very, very early on

3  in the case, again, possibly even before their

4  answer was filed, there hasn't been any

5  substantive --

6       THE COURT:  Well, it just seems --

7       MS. SICALIDES:  Your Honor --

8       THE COURT:  Yeah, go ahead.

9       MS. SICALIDES:  I just want to clarify one

10  thing.  Actually, OSF has said that it, it would be

11  able to agree to the injunctive relief it requested

12  because we didn't engage in the conduct to begin

13  with, and we were somewhat concerned about how you

14  would draft it, that it wouldn't just (inaudible)

15  more litigation (inaudible), but we did not

16  refuse --

17       THE COURT:  Well, an I'm not trying to -- I

18  just wonder if it isn't a good point in time for

19  you each to broach the possibility with your

20  clients of, of exploring the possibility of finding

21  a way to resolve this case short of going to the

22  very end.

23       I mean, the reality is you both have very

24  sophisticated clients.  They both have a lot more

25  in common than they have different, and it is hard

to imagine that the two of them could not find a
way to work in this market in a way that was
mutually beneficial.  And it seems like they're on
a course of spending a gigantic amount of money
litigating this case.  I can't even imagine what
the collective billing is for the two of you on
this relatively routine motion.  And it just might
be a good time for you all to raise the possibility
that there be some sitting down to talk to see if
there's a way to resolve this case.

And I raise the issue of settlement in every
case with all parties because, you know, the
reality is, as you know as lawyers, you know, some
good lawyers and good clients can, you know,
evaluate relative risk and can typically and almost
always do settle a case.  In a case like this,
where we have very good lawyers, very sophisticated
clients, it just seems impossible that in this case
a reasonable settlement couldn't be reached when
settlement is reached in so many cases when the
clients are far less sophisticated, with less
skillful lawyers.

So, you know, obviously both sides have a
right to litigate this to the very end, but we're
sort of at the midpoint in this case in some

1   respects.  Expert discovery hasn't begun; experts
2   are expensive.  You know, I, I would highly
3   encourage you both to talk to your clients about
4   coming to the table, at least having some
5   discussions.  I would certainly be happy to assist
6   with that, should it ever become necessary or you
7   all think it would be useful.  But I do encourage
8   you to have that discussion with your clients as we
9   enter this new phase in the case, and it's
10  certainly not going to get any cheaper.
11      Okay?
12      MR. GREENBURG:  Thank you, Your Honor.
13  Appreciate it.  We will certainly pass along your
14  comment to our client.
15      THE COURT:  Okay.
16      MS. SICALIDES:  Thank you, Your Honor.
17      THE COURT:  Okay.  Have a good day.  Thank
18  you.
19      MR. GREENBURG:  Bye.
20      THE COURT:  Bye.
21      (Proceedings concluded.)
22
23
24
25

1                         <u>CERTIFICATE</u>

2

3          I, JENNIFER E. JOHNSON, CSR, RMR, CBC, CRR,
   certify that the foregoing transcript constitutes a
4  transcript of the original shorthand notes from the
   recorded proceedings had at the time and place
5  aforesaid before the HONORABLE JONATHAN E. HAWLEY,
   U.S. Magistrate Judge, to the best of my abilities.

6

7                          <u>s/ Jennifer E. Johnson</u>
                           JENNIFER E. JOHNSON
8                          CSR, RMR, CBC, CRR
                           License #084-003039

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25