# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

July 19, 2017

To:     Kenneth A. Wells
        UNITED STATES DISTRICT COURT
        Central District of Illinois
        Peoria, IL 61602-0000

| | |
|---|---|
| No. 16-3791 | METHODIST HEALTH SERVICES CORPORATION, Plaintiff - Appellant<br><br>v.<br><br>OSF HEALTHCARE SYSTEM, Defendant - Appellee |
| **Originating Case Information:** | |
| District Court No: 1:13-cv-01054-SLD-JEH<br>Central District of Illinois<br>District Judge Sara Darrow | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:            No record to be returned

**NOTE TO COUNSEL:**
If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten **(10)** days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

------------------------------------

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:** 7/19/2017

**Received by:** /s/ K. Burns

form name: **c7_Mandate**(form ID: **135**)

In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 16-3791

METHODIST HEALTH SERVICES CORP.,

                        *Plaintiff-Appellant*,

v.

OSF HEALTHCARE SYSTEM d/b/a SAINT FRANCIS MEDICAL
  CENTER,

                        *Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:13-cv-01054-SLD-JEH — **Sara L. Darrow**, *Judge*.

_____

ARGUED APRIL 13, 2017 — DECIDED JUNE 9, 2017

_____

Before POSNER, MANION, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. Methodist and Saint Francis are the two largest hospitals in Peoria, Illinois; Saint Francis is considerably larger and more profitable than Methodist. On February 5, 2013, Methodist filed suit against Saint Francis in the federal district court in central Illinois, charging Saint Francis with violating the Sherman Act to the detriment of Methodist, a competitor. The district judge granted sum-

mary judgment in favor of Saint Francis. Methodist had pleaded state-law claims as well, which the district judge also rejected; we have nothing to add to the judge's discussion of those claims, beyond noting that they largely duplicated the Sherman Act claims.

Methodist's antitrust case is quite simple. Its essence is that because Saint Francis is the dominant hospital in the markets served by both hospitals (the markets consisting of acute-care inpatient services and outpatient surgical services sold to commercial health insurers in an area in central Illinois comprising Peoria, Tazewell, and Woodford Counties, known as the "tri-county area"), it was able to persuade insurance companies to enter into exclusive contracts with it; and being exclusive, those contracts prevented the companies from contracting with Methodist, to the latter's detriment. The contracts involve health insurance plans that use restricted-provider networks, meaning that each plan has a network of hospitals and other health-care providers that have agreed to charge the plan's members specified rates. Each plan encourages its members to use its in-network hospitals, with "encouragement" taking the form either of charging the members higher prices for treatment at out-of-network hospitals or by not covering treatment at such hospitals at all.

The exclusive contracts between Saint Francis and the insurance companies required that for specified health insurance plans Saint Francis would be an in-network hospital and Methodist an out-of-network one. The major plan was the Blue Cross Blue Shield PPO ("PPO" stands for Preferred Provider Organization), whose members constituted a third of all the commercially-insured patients in the area. Saint

Francis's exclusive contracts covered more than half of all commercially-insured patients in the area, and Methodist contends that as a result it couldn't obtain a sufficiently high volume of patients to enable it to invest in quality-improving projects it otherwise would have undertaken.

One reason for this disparity is that health insurers regard Saint Francis as a "must have" hospital, that is, a hospital with which the insurer must have a contract to provide hospital services, because it provides certain inpatient services that the other hospitals in the tri-county area do not provide, such as solid-organ transplants, neonatal intensive care and other sophisticated pediatric care, and, probably most important, a Level 1 trauma center, certified by the state to "provide optimal care to trauma patients, [including] all essential services in-house, 24 hours per day." Illinois Department of Public Health, "Trauma Program," www.dph.illinois.gov/topics-services/emergency-prepared ness-response/ems/trauma-program (visited June 8, 2017).

Given the more extensive services offered by Saint Francis (further illustrated by its large number of beds—616 to Methodist's 330), it's no surprise that it attracts more commercial health insurance companies than Methodist does—and patients covered by commercial insurance are more profitable for hospitals than patients covered by government insurance. It's also no surprise that Saint Francis should not want to share the health-care insurers that have contracted to use its services thereby making Saint Francis part of their hospital network.

But what is more common than exclusive dealing? It is illustrated by requirements contracts, which are common, and legal, and obligate a buyer to purchase all, or a substantial

portion of, its requirements of specific goods or services from one supplier. Saint Francis's deals with the health insurance companies are a form of requirements contract, for the deals require the companies to limit the network of providers from which they obtain the health care that their insurance contracts obligate them to obtain for their insureds. And an insurance company may get better rates from a hospital in exchange for agreeing to an exclusive contract, as exclusivity will drive a higher volume of business to the hospital. The contracts made by Saint Francis are of fixed rather than indefinite, let alone perpetual, duration; and when they terminate, the insurance companies are free to strike deals with other hospitals—with Methodist, for example.

It's true that some exclusive-dealing arrangements run afoul of the Sherman Act, see *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 394 (7th Cir. 1984); if Saint Francis had signed long-term exclusive contracts with all the health insurance companies serving the tri-county market, the destruction of competition in health services might result in sky-high prices for such services and the bankruptcy of the other hospitals in the market, such as Methodist. But there is no evidence of such dire consequences of Saint Francis's exclusive contracts with insurance companies—no evidence for example that Methodist could not duplicate the special services, such as Level 1 trauma care, that makes Saint Francis so special; apparently it has been able to raise hundreds of millions of dollars for new investments. Also no evidence that Saint Francis's exclusive contracts have a significant exclusionary effect, since most of the contracts expire every year or two, giving other hospitals, such as Methodist, a shot at obtaining the next contract by outbidding Saint Francis. The Blue Cross Blue Shield PPO contract alone

No. 16-3791 5

accounts for more than half of all patients covered by a Saint Francis exclusive contract—and it has expired every two or three years during the period that Methodist alleges it was excluded from the market. If Methodist can't outbid Saint Francis—if a health insurance company prefers to contract with Saint Francis, the logical inference is that Saint Francis offered the health insurer a better deal, doubtless based on its offering a broader and deeper range of services than Methodist does. Methodist has made its own exclusive contracts with insurance companies, although they cover fewer patients than Saint Francis's exclusive contracts do. As we've said before, "competition-for-the-contract is a form of competition that antitrust laws protect rather than proscribe, and it is common." *Paddock Publications, Inc. v. Chicago Tribune Co.*, 103 F.3d 42, 45 (7th Cir. 1996).

A curious feature of the case is Methodist's isolation. Methodist devotes much of its brief to listing the commercial insurers that have allegedly been hurt by Saint Francis's exclusive dealing, but none of those companies is a plaintiff; it doesn't discuss any other hospitals, other than mentioning that there are four other (smaller) hospitals in the tri-county area. So far as appears, the overall effect of Saint Francis's exclusive contracts in the tri-county area may be slight; indeed Methodist may be the only victim. Methodist had sent a copy of its complaint to the Department of Justice, but it declined to file a case of its own. Methodist could have tried to persuade the four other hospitals in the tri-county area to join its suit as additional plaintiffs, but there is no indication that it did.

Methodist argues that Saint Francis's exclusive contracts "forced insurers and ultimately consumers to pay nearly $30

6                                                                No. 16-3791

million more than they would have paid in a competitive market." But Methodist is not the representative of any insurer or of any consumer; it's simply an unsuccessful competitor with a hospital that offers patients insured by health insurance companies more health care than it does. And Methodist doesn't have any theory of how Saint Francis's exclusive contracts could have caused prices to rise.

As the district judge concluded and we now conclude, Methodist failed to make a case. The grant of summary judgment in favor of Saint Francis is therefore

AFFIRMED.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

June 9, 2017

Before:
RICHARD A. POSNER, Circuit Judge
DANIEL A. MANION, Circuit Judge
MICHAEL S. KANNE, Circuit Judge

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

| No. 16-3791 | METHODIST HEALTH SERVICES CORPORATION, Plaintiff - Appellant<br><br>v.<br><br>OSF HEALTHCARE SYSTEM, Defendant - Appellee |
|---|---|
| **Originating Case Information:** ||
| District Court No: 1:13-cv-01054-SLD-JEH<br>Central District of Illinois<br>District Judge Sara Darrow ||

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

July 11, 2017

*Before*



RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 16-3791

| | |
|---|---|
| METHODIST HEALTH SERVICES, CORP.,<br>   *Plaintiff-Appellant*,<br><br>   *v.*<br><br>OSF HEALTHCARE SYSTEM d/b/a SAINT<br>FRANCIS MEDICAL CENTER,<br>   *Defendant-Appellee*. | Appeal from the United States District Court for the Central District of Illinois.<br><br>No. 1:13-cv-01054-SLD-JEH<br><br>Sara L. Darrow, *Judge*. |

**O R D E R**

On June 23, 2017, plaintiff-appellant filed a petition for rehearing *en banc*. All the judges on the original panel have voted to deny the petition, and none of the active judges has requested a vote on whether to rehear the case *en banc*. The petition is therefore DENIED.